LARKIN ECHOLS et al. *vs.* CHARLES BUTLER et al.

Where W. G., as the agent of C. B. and others, sold a tract of land to J. G., who was to pay $240 for the land, and he paid the sum of $25 in hand, and gave his three notes for the balance, payable in one, two, and three years after date; and the vendors executed a bond to make a title to the land when the purchase-money should be paid; J. G. having sold the land to L. E., he filed a bill against C. G. and others, original owners of the land, for a specific performance of the contract for its conveyance according to contract. The three notes being due in January, 1850, and unpaid, it was agreed between J. G. and W. G., acting as the agent of the original owners of the land, that J. G. should have one year longer in which to make payment; and on failure to pay promptly, he (J. G.) should quietly surrender the possession of the land, and the contract should be rescinded; J. G. having before the notes were all due sold the land to L. E., who agreed to complete the payment of the purchase-money; and the parties having failed to pay the money when it became due, W. G., as the agent of the vendors, after that, in May, 1850, wrote a letter addressed to J. G. and L. E., notifying them that the contract made with the former, had been forfeited " by his non-compliance " with its terms; and W. G. testified that he delivered this letter to one D. N., who resided in the vicinity of the parties, and requested him to deliver it to any person in possession of the land. W. G. further testified, that in June or July following, L. E. called on him at his office and informed him that he (L. E.) had purchased the land from J. G., and would pay the amount of his indebtedness for the land in a few days; and W. G. further proved, that he saw nothing more of L. E. until November following, when he tendered the amount of money due on said land to him, (W. G.,) who refused to execute a deed to the land or receive the money: *Held*, that this was at most but an agreement to rescind the contract at a future day, if certain things were not done; either party might, if so disposed, waive whatever advantage he had under that contract, and stand with the consent of the other, either express or implied, upon the terms of the original contract.

It was the duty of W. G., as the agent of the vendors, when L. E. called on him, to tell him that he (L. E.) would pay the money for the land, to have informed him that he considered the contract at an end; and L. E.'s propo-

Echols et al. *v.* Butler et al.

sition not being objected to at the time, it will well be considered as assented to by the party to whom payment was promised.

In error from the northern district chancery court at Holly Springs; Hon. Henry Dickinson, vice-chancellor.

The facts of the case are sufficiently set forth in the opinion of the court.

*P. T. Scruggs,* for appellants.

*Stearns* and *Harris,* for appellee.

On the rights of assignee. 7 Paige, 301; 11 Ib. 204; 2 Johns. Cas. 438.

On parol rescission of written contract. 3 Humphreys, 584; 8 Paige, 473; 2 Johns. Ch. R. 405.

On the right of vendor to rescind. 4 Smedes & M. 600; 2 Leading Cases in Eq., Pt. 2, p. 16; 4 Johns. Ch. R. 559.

Time, of the essence of the contract. 2 Leading Cases in Eq., Pt. 2, p. 19; 4 Brown's Ch. R. 346; 1 Johns. Ch. R. 370; 1 Sug. on Vend., p. 297, 298, 300, 313; 2 Story's Eq., sec. 771, 774, 776, 780; 3 Leigh, 187; 1 Eq. Dig. 118, (67); 5 Vesey, 719, 818; 13 Ib. 225.

1. That there is a broad distinction between the doctrines of courts of equity and courts of law, in regard to contracts.

2. That courts of equity will do no more than see that the vendor gets his money, before he is compelled to part with his land.

3. That time is never regarded by courts of equity as of the essence of the contract, unless peculiar circumstances are shown to exist; and then only on account of those circumstances.

4. That compensation, and not forfeiture, is the policy of chancery courts. 2 Story's Eq. § 775; 9 Johns. R. 466; 1 Dev. & Battle, 276.

5. Possession of Echols was an evidence that he regarded the contract of Goodrich as still subsisting. 2 Leading Cases in Eq., Pt. 2, p. 16, 18, 26, 29, 30, 31.

6. Purchaser is always regarded with more favor in equity than vendor. 2 Humph. 119. The case at bar precisely similar.

Mr. Justice FISHER delivered the opinion of the court.

The object of this bill was to obtain a specific performance of a contract for the conveyance of a tract of land by the appellees, sold to the appellant, James Goodrich, and by him sold to the appellant, Larkin Echols.

The contract was entered into on the 29th of December, 1845. Goodrich was to pay the sum of $240 for the land. He paid the sum of $25 in hand, and gave his three notes for the balance, payable in one, two, and three years after date. The appellees, on their part, executed a bond binding themselves to make title when the purchase-money should be paid.

The defence set up is, that in January, 1850, the three notes all being due and unpaid, it was agreed between Goodrich and Walter Goodman, acting as the agent of the appellees, that Goodrich should have one year longer in which to make payment; and on failure to pay promptly, he should quietly surrender the possession of the land to the appellees, and that the contract should be rescinded. Goodrich, in October, 1849, sold the land to Echols, and transferred to him the title bond, Echols agreeing to complete the payment of the purchase-money.

The parties failing to pay the money in January, 1850, according to this last agreement, Goodman, as the agent of the appellees, and on the 20th of May, 1850, wrote a letter addressed to Goodrich and Echols, notifying them that the contract made with the former had been forfeited " by his noncompliance " with its terms. Mr. Goodman, in his deposition, says, that he delivered this letter to one John Neely, who resided in the vicinity of the parties, and requested him to deliver it to any person in possession of the land. The witness further proves, that in June or July following, Echols called on witness at his office, and informed him that he (E.) had purchased the land from Goodrich, and would pay the amount of his indebtedness for the land in a few days. He further proves that he saw nothing more of Echols until November following, when the amount of money due on account of the land was then tendered, at least it was so treated by the witness, and a deed demanded. The witness refused to receive the money and to execute the deed, on the ground that the contract had been vir-

tually rescinded under the agreement made with Goodrich in January, 1850.

This is in substance the case as made by the answer and the evidence, and the question is, whether it is sufficient to defeat the specific performance of the contract. The various questions elaborately argued by the counsel for the appellees, may all be conceded so far as the merits of this case are concerned. The question is more one of fact than of law. It seems to be taken for granted that the contract was in fact rescinded under the agreement between Goodrich and Goodman in January, 1850. This is an error. It was at most but an agreement to rescind at a future day if certain things were not done. Either party might, if so disposed, waive whatever advantages he had under the contract, and stand with the consent of the other, either express or implied, upon the terms of the original contract. This is really the attitude of the case. It is true Mr. Goodman wrote a letter addressed to the parties in possession of the land, that the contract had been forfeited by the non-compliance of Goodrich with its terms; but there is not one word of proof, by inference or otherwise, that this letter was ever delivered to Echols, who had purchased the land from Goodrich.

Again, Echols called on the agent in June or July following, and informed him of the purchase, and that he, Echols, would pay the money in a few days. Not a word is then said by the agent about a rescission or forfeiture of the contract, or the least objection made to receiving the money as promised by Echols. Then was the time for the agent to have spoken and made known his intentions as to his future course of action, or to have taken his stand upon the last contract with Goodrich.

No objection, however, appears to have been made to the course which Echols proposed to pursue in paying the money in a few days. What was not objected to in this respect must be treated as assented to by the party to whom payment was promised. There is nothing in the whole record showing that the agent ever insisted on a forfeiture of the contract, so far as Echols is concerned, until the money was actually treated as legally tendered, and the same may be said as to Goodrich. The party may have been put to trouble or expense to raise the

money, and for this reason the agent should at the proper time have made the objection to receiving it, and so informed Echols when he said he would pay in a few days.

Decree reversed, and decree in this court for a specific performance of the contract, the money to be paid in sixty days, if not sooner demanded. If not paid on demand, the complainant to pay interest up to date of payment. Deed to be executed when money shall be paid.

The appellants to pay the costs of the court below.